The final case on our call of the docket for Wednesday, November 17, 2010, is agenda number 20, case number 110092, Andrea Barber v. American Airlines, Inc. Counsel, please proceed. May it please Chief Justice, fellow Justices, and opposing counsel, my name is Mike McClellan. It's an honor for me to be here before you today on behalf of American Airlines. As you know, the case arises from an apparent ticket dispute at O'Hare Airport when a counteragent at American Airlines allegedly refused to refund a $40 baggage fee after Ms. Barber's flight was canceled. The issue today is whether American Airlines tender of that $40 before any motion for class certification was filed rendered this case moot. We submit that it did, and we would ask this court to reverse the appellate court order to the contrary for three reasons. First, the decision by the appellate court is a fundamental departure from the law that was set forth in Wheatley and virtually eviscerates the concept of mootness and justiciability in a class action lawsuit. Second, the law created by the Barber opinion will have some adverse consequences in the future. And third, the court erred in comparing our case to and relying upon Gelb to reach its decision. In order to try to make the points or hopefully crystallize the points that we made in our brief, I think it's maybe helpful to take a step back real quickly to the Wheatley decision in 1984, because it was in Wheatley where the court held that once the teachers had accepted that offer of employment, the rest of the case was moot. And the court specifically recognized in that case that it was an interest, that the requirement that the named representative have a live stake in the outcome was subsumed in sections two and three of the class action statute. And if you fast forward through the years up to 2000, to try to crystallize the general rule here, if you look at the way the cases have evolved, the court then discussed the Hillenbrand decision by Justice Hoffman in the First District in 1999, which was a case where the tender was made after the class motion was certified. The courts had considered the case in the Hugh versus IBM where the tender was made before the class was certified. And it was a well-set rule by year 2000, based on those decisions, that the common thread was that a defendant can moot a case by making a tender unless there was a motion for class certification on file that was pursued with reasonable diligence. That was the uncontested standard in the state of Illinois through at least 2000, and in fact has been repeated in several cases since then, as recently as last December in the Lewis versus Giordano's case that we discussed in the brief. So I would lump that into the general rule, and I think that's well-cited in many of the cases. How soon after the lawsuit was filed did the defendant tender payment? The defendant tendered the payment 15 days, I believe, Your Honor, after suit was filed. I believe that we tendered on September 4th via the affidavit found at page 44 in the record. There's an affidavit that we submitted that showed it was on September 6th, I believe, September 4th. And the complaint was filed August 15, served August 21. So about 15 days. Thank you. So if you contrast that general rule that I just mentioned with some of what has developed since I guess its origins perhaps back to around 2000 or so in the Gelb decision, in the Gelb decision there was a reference in that decision made that the interests of perhaps the putative class seemed to outweigh some of those other interests. And if you look at Gelb, and you look at some of the cases that followed to try to create this exception to the general rule, there are several. One is Bremer v. Compaq Computer, Cohen v. Compaq Power Systems, Akinyemi v. J.P. Morgan. All those cases are in the briefs, but as you can see there is language in those cases in what I would call the exception that's emerged in the last 10 years, which suggests that a plaintiff must have time not only to get the motion on file, but to do the discovery necessary to get that motion on file. Well, the law has therefore seems to have changed with the exception, and here's the problem that we see. Number one is, you know, what's wrong with this strain or this exception that's kind of emerged? Well, we would submit that if the court were to follow this Barber rule, and many of the cases that follow with it, you can essentially take the Wheatley decision. It's no longer good law. The exception has completely swallowed the rule. The touchstone for the Wheatley decision is that the interested class members must have some live stake. You cannot have a general rule that says that a defendant can moot a case before a class motion is filed. Yet, on the other hand, have an exception that says, but the plaintiff has a reasonable amount of time to do the discovery necessary and even get the motion on file. They are completely irreconcilable concepts. The exception has completely swallowed the rule that's previously established, for lack of a better word, safe harbor or free time that a defendant might have to make a tender, to make things whole, before the motion is filed, no longer exists. Because there's a subjective land of reasonableness that someone can pursue discovery and get a motion on file. That's the first problem we see. The second problem we see is, in this particular case even, look at the facts of this case. We tendered 15 days after the lawsuit was filed. That was before any class motion was filed. It was before any of the requests for discovery had been made. And it was before the statutory period of time for us to even respond to the complaint. If that, if, when could we make a tender if that's not going to moot the case? There is, I can't think of a situation where we would be able to take advantage of, if that's the right phrase, of the Wheatley rule that allows us to make a tender before a class motion is filed, if we can't do it in this case. Another problem is, you know, someone might say, well, this case is like the Hayman versus Auto House. And your answer, defendants, is just take care of the problem before the lawsuit is filed. Well, here's the problem with that. And I refer to this, perhaps, as a gotcha rule. Under the Barber decision and the Gelb decision, this law will become completely intolerant of mistakes made by entry-level employees. It would require perfection at almost every level of the corporation. Under this law in Barber, and I use the word entry-level employee not with disrespect, but this was a frontline employee dealing with customers at the airport. If an employee like that gives bad advice or improper advice, I can't correct it. The company cannot correct it under this law. Management didn't even know about this dispute until lawsuits filed. We had no chance to try to cure this. That's why we have different levels and organizations. That's why we have managers on duty. That's why we have customer service departments. Under this law, one mistake by an entry-level employee, gotcha. I can file my lawsuit the next day and keep you embroiled in the class action for the subjective period of reasonableness, however long that may be. Counsel, what was the date of the flight when this occurred? August 11, 2008, Justice Tyson. And when was the complaint filed? August 15, four days later. And the payment was tendered September 4th. That's correct. Thank you. A third problem is, worse yet under this decision, all that someone has to do is allege they were given advice contrary to what the company's policies were. Another thing this will lead to, we think, is an increase in litigation as a result of this. Why? In this case, with only four days having elapsed, there was never a chance to give the customer service process a chance to work. We tried to refund this in accord with our published policy to provide refunds, which was uncontested at the trial court level. When that was done, the answer to that, when we tried to tender this 15 days after the suit was filed, no thanks, we're going to sue you. So it just seems that on this one-time communication that was had with this employee is how we ended up in the suit that we're at today. The case is a lot like the Raymond versus Aries case that the amicus cites. You know, basically it says if in the course of business like this, especially us in this customer service industry, to have a chance to let that process work. In this case, it was uncontested. We had that policy to make the refunds, and we did our best to try to comply with it. As a matter of fact, if you look at the affidavit, I believe it's on page 44 of the record, and that affidavit, the affiant says that she received notice as the corporate office manager on September 4th and called the plaintiffs that day. If the Barber decision is allowed to stand, we would suggest that it would invite litigation and make the trial courts the customer service department in the state of Illinois in our judiciary system. Is it a problem under the appellate court's holding that there's no live claim at the time the circuit court would decide the issue of class certification? I think that there is. I think that the fact that that's the whole concept of I would ask that then where does justiciability and mootness come in? If nobody has a live claim, okay, if it is okay to make a tender before the motion is filed, makes perfect sense to me. Once you have the motion filed and you tender afterwards, the courts then say it's the filing of the class motion that is enough to bring the interests of the absent class members home to the court. Before that, that was the effort in the Sussman case that Justice Hoffman relied on, the Seventh Circuit decision in Sussman, went through that analysis and they tried to balance the interests of the concepts of mootness and justiciability and weigh them against the interests of the absent class members. And they said the way that we can do that is if you mark the filing of the motion for class certification, that strikes the balance. Up until that point, if there's a tender made, mootness prevails, the case is moot. After that point, your defendants, you can't stop, you can't, you can file your case, but you can't moot the case for the remaining class members. That answer your question? Yes. Thank you. In this case, you know, and the rationale also, just to follow up on that point real quick, the purported absent class members aren't prejudiced by that because successive lawsuits by similarly situated persons are not barred. If anyone else felt harmed, they can file suit and there's another remedy and that is to substitute. There was 207 days, I think, from the time of filing to the time of decision and five months from the time the motion to dismiss was filed to the time it was ultimately dismissed, there was never an attempt to file a motion to substitute another member. What I'd like to do next is just move to the last part of the argument here and that is to say that even if for some reason the Barber court was correct in following Gelb, which as I've explained, we don't think that they were, they misapplied Gelb and the court was wrong in relying on it for these reasons. The specific quotes that the lower court mentioned was a couple. On page 884 of the opinion, the Barber court said in comparing our case to the Gelb case and to refresh you, in Gelb is the one where there was a stay of discovery and the Gelb court felt that that was unfair to pursue the motion for class certification. In the Barber opinion, the court said, similarly in the case of Barber, the plaintiff served discovery to obtain the identities of the putative class members only a month after having served defendant with a class action complaint and the quote from the Barber decision is, but as in Gelb, it was stayed. The court also said that by seeking discovery and promptly filing a motion to compel, she exercised the required diligence. I completely disagree. It is not support of the record. Here's what the record supports. We filed our motion to dismiss this case in October of 2008. On November 7th, and that's at record page 88, there's a one-page order on that day and on that day everyone appeared to court and if you look at the top of the order, it is an agreed order. The agreed order set the briefing schedule for the motion to dismiss. At the very end of the agreed order, it says defendant's objections to the discovery are entered and continued. An agreed order is not a stay. That's the way we do things in the trenches, in the courthouse, when the parties reach an agreement, didn't even go see the judge. It was an agreed order that set the briefing schedule, plaintiffs agreed to that order. There is no indication, unlike in Gelb, where the trial court tried to muscle that through, where we Americans tried to obstruct that right to move forward with the discovery. So I would suggest that that was the first opportunity, excuse me, the first opportunity to pursue the discovery if they felt that they needed it. Second opportunity, December 16th, 2008, record page 56. Take a look at the response that they filed to our motion to dismiss. Nowhere in the response to our motion to dismiss is there anything mentioned about how they will be prejudiced by not having that discovery answered. There was nothing mentioned. There was no Rule 91B affidavit attached saying we need more discovery in order to be able to respond to this motion. A third opportunity, record page 89, January 16, 2009. When the November 7th briefing schedule was set, it set a status date on the motion for January 16th of 2009. The motion is completely briefed now. The parties go before the court on January 16th before Judge Novak and as it works in Cook County, where are we at with the motion? Judge, it's fully briefed. Okay, I'm going to set the hearing date now for March, which is what she did. Nothing mentioned at the January 16th conference. There's nothing in the record to show anybody needed any more discovery whatsoever in order to respond to this motion or to file a class motion. It wasn't until three weeks after the motion was completely briefed and two weeks after the motion was set for hearing, that's when they filed the motion to compel. That's why I say that the Barbara Appellate Court's opinion that they promptly filed the motion to compel, I disagree with that for the reasons we just stated. They had three opportunities to pursue it over the course of several months. So the difference between this and Gelb is that there was no stay. I am not here to cast any aspersions on what Counsel for Plaintiffs did at the trial level. That's not my point. In fact, it looks like they made a strategic decision not to pursue discovery while the motion was pending. Their choice. When they then filed the motion to compel, the other error that the Appellate Court said here, and I'm reading from page 882, the Appellate Court said on February 26, 2009, the trial court informed plaintiff that it was placing the issue, meaning the motion to compel, on hold while the motion to dismiss was pending. That is just not accurate. There is nothing in this record where the trial court put on hold their motion to compel. It didn't happen. If you look at the order that was entered, I believe that record is page 91, which is the order from February 26 that said motion to compel denied. There's no response brief that we filed. There isn't even a transcript of that hearing. So the Appellate Court, we believe, was wrong in making those statements that it did too. And finally, there was no indication here that there was any class motion filed. So unlike the other cases, the Hillenbrandt, Areola, Hugh, the others where there were motions filed, motion for class search was never even filed in this case. So I can see my yellow lights on. And on that basis, we ask that the Court reverse the Appellate Court order. I'll talk to you again in rebuttal. Thank you. Thank you, Mr. McQuillan. You're welcome. Counsel? May it please the Court, Mr. Chief Justice, members of the Court, Mr. McQuillan. My name is Warren Luppell. I represent Andrea Barber, who was the plaintiff in the trial court, the Appellee, before this court. Before I begin my planned argument, I'd like to make a couple of comments about the opening argument. To decide, as it is suggested, that a tender if made a day before the motion for class certification is made, then the case is moot. And if it's made a day after the class certification, it isn't. To me, it is much too arbitrary for our judicial system. It's not the real issue in this case, that bright line. But it doesn't really make a lot of sense as we proceed in civil proceedings. The second thing I want to note is that counsel criticized the fact that there wasn't another member substituted after they made the tender. Well, think about that for a minute. Who was that substitute member? That's what the interrogatory was about. Are there any other members? They didn't know. There was no way to determine who a substitute member would be. While the case may be public, it's not public in the sense that anybody who had a similar experience would know. So there was no ability, no opportunity to do that. Third, I'd like to mention that about the strategy in the motion to compel. What the record shows is that seven days after the interrogatories were filed, the court entered a motion, excuse me, the court entered an order entering and continuing the objections to the interrogatories. I misspoke. I said seven days after the interrogatories. Seven days after the objection to the interrogatories was made by American Airlines, they refused to answer the interrogatory to give the names of substitute members, among other things. The court entered an order entering and continuing the objection. Now, I have to ask it rhetorically because I don't know the answer to it. If such an order is entered by a judge, is it appropriate for counsel for the other side to file a motion to compel when the objection has been entered and continued? It's awkward at best. I think that the real question in this case is whether or not a representative, a plaintiff in a putative class action case who is diligently pursuing the case can suffer dismissal of that case under two circumstances that occurred here, where the defendant withheld the information necessary to present a good faith motion for a class certification by refusing to answer the interrogatories and then claimed that the action was moot by unilaterally posting a credit to the plaintiff's credit card. And I say it parenthetically, but they posted just that, the complaint which had been on file for some time by the time that was done sought interest. How long was it? American Airlines was served with the complaint on August the 21st, 08. Their appearance was due on September 20th, but wasn't filed. And September 25th, so it would be one month, four days, between the time that they were served with the complaint and the time that they chose to credit the credit card without telling us. They told us a few days after that. I'm sorry, Mr. Rappel, I'm confused. I thought counsel told us it was September the 4th. I heard that. There was a telephone call on September the 4th between plaintiff's counsel and somebody from American Airlines who said, according to the record, something like, I'm sorry I'm not quoting it precisely, but something like that we'll give you the $40 and we'll consider whether or not we will give you the court costs that were involved. And that was refused. So it was a tender that was made on September 4th, but the credit did not occur until later that month? That's correct, because I would suggest, to your honor, that there wasn't any agreement then one way or the other about the tender. There was a conversation regarding it. What impact does this pretty shortened time frame have on our principle that we encourage settlement of claims between people and discourage litigation? Well, I appreciate that that is generally true, but when you have an undefined class, as you have here, remember this isn't like Wheatley, for example, which I don't even know how that's a class action, there's only 59 people, but there were 59 people who signed the contract and they knew who the 59 people were. And when they made the offer, everybody accepted, I think, except four or five people. It's not that kind of situation that we have here. What could be the offer that they're making? Was the suit filed to collect the $40? No, the suit was filed as a consumer protection kind of a suit. Consul argued and American Airlines argued about their refund policy. I mean, the appellate court's decision was extraordinary on this about what they went into. There's a ticket contract and that says that your money gets refunded. It doesn't specifically refer to baggage, but it puts the baggage claim and the ticket together and says your money gets immediately refunded. You have to have a master's degree in computer science to find this so-called policy. And I would also suggest to the court that a policy is not simply stated, it's followed. And we have no idea, at the time that the complaint is filed, whether or not any policy of refunds is in fact followed. So that when these interrogatories were very necessary for the process of this case, do we want a situation in which plaintiffs in these kinds of situations file motions for class certification and self-protection and don't have the information available to them? Isn't this possible, though, in any lawsuit that somebody files against, you know, suppose my luggage gets damaged in the, you know, on some flight. You know, if I file suit against that, should they rebar or should I immediately be in a situation? Is it the nature of the suit? Is it because it's a consumer against a corporation or what? Why is it the way it is? Why do you think it should be that way? For two reasons. First, the arbitrariness of the rule that the defendant appellant is asking this court to do that line, of course, to follow. And second, in the instance of the damage to your luggage or your baggage, I haven't looked to see what the contract is, but if you have reason to believe that the airline takes the position that they can damage your luggage and not pay you for it, then it seems to me that you have reason to believe that there may be others who are similarly situated. And you can move forward on that, but you'd have to find out, wouldn't you? You'd have to find out whether or not they're not going to tell you. For all we know, there were 20 suits filed across the country about this, and each one they decided to pick off the plaintiff on some basis. We don't know that. And we can't ask the court to certify a class that may not exist. We have to find out if it does. And American Airlines is talking to the court about their great concerns about what's going to happen. But what exactly is it that they're concerned about? Are they concerned that there is a class of people? And that if they don't have the opportunity to pick off the representative member of the putative class, then the class will be identified and they'll have to change what is their policy? What exactly is it that is the great concern? Mr. LaPelle, I have a question with regard to that. The appellate court concluded that the pick-off exception should apply here because you were relatively reasonably diligent in pursuing the class certification, but how long? I mean, what standard do we use? How long of a delay in moving for certification is too long? Six months? A year? What is a workable standard for this? I would suggest to Your Honor and to the court that it isn't a standard that says six months or a year or some specific time. It's a determination by the trial court as to whether or not the plaintiff's counsel has acted with diligence. I mean, the Gelb court said that the due diligence should be on a case-by-case basis, that the interest of the absent members of the class should be considered, that it was concerned with the integrity of the process, and it said that there should allow a reasonable opportunity. I noted in my, this is my note, so again it's not precise, but in the last sentence of the Gelb court's opinion, it says we reverse so that the determination of class certification may be made in appropriate time. I think, in more direct response to Your Honor's question, I think that it is wholly appropriate to leave that in the hands of the trial judge. If the plaintiff's counsel and the plaintiff who is asking to be the representative of the class is acting in a diligent fashion, then the case ought to be allowed to proceed. They ought not to be in the position to pick off the plaintiff under those circumstances. The arbitrariness of this class certification issue is, has got to lead. I mean, I can't see, I can't see any other choice but the fact that with the complaint will be filed the class certification motion. That's the only way the plaintiff can protect themselves if you have, and that of course is not reasonable, it's not rational. It creates a situation that nobody really wants because that class certification motion isn't going to be as developed as it should be. Now, there are cases where, in my view, the discovery is not necessary. In Wheatley, it certainly isn't necessary. You've got 59 people who signed the same contract and all 59 of them are saying that their contracts have been violated pursuant to the statute and so forth. In the U case versus IBM, it's easy to determine how many units were sold. If you have a product and you're saying that there's something about the sale of that product that is wrong or tortious or breach of contract or whatever the basis of the class action is, you have a pretty good idea. You can say to the court that the 4,000 of these units were sold and therefore we have numerosity in all 4,000 of those that contain the warranty that said such and such and therefore they have common questions of fact and so forth. In that kind of situation, I think that the claim of discovery would be rejected by the trial court. And I think properly so. But in a case like the one that is before you and the one that Justice Garmon mentioned with the damage to the luggage, you don't know. And therefore, in order to be able to properly develop and present your motion, you need discovery. And if you are pursuing that discovery in a manner that is reasonably diligent and as determined by the trial judge, then the case ought not to be mooted. That gives the, I mean, the class. So you're saying that class size or potential class size should impact the reasonable diligence assessment? Not so much the size, Your Honor. It does have to be a certain size to a numerosity requirement in order to be certified as a class. But I say to determine whether or not there is a class, whether or not there's a class, may require discovery in certain cases as it did in this case. So you can't treat all cases the same. And this bright line rule would be unfair, irrational, and would not promote justice. And that's why we think it's inappropriate to do. In this case, bear in mind that this Court's rules do not allow anybody to initiate discovery until 30 days after all defendants have appeared or are required to appear. 30 days after American Airlines was served, they did not file an appearance. And eight days after that, the interrogatories were served. It apparently wasn't an issue in Gelb. It's kind of peculiar to me because they filed their discovery document and interrogatories two weeks after they filed. But I guess nobody brought that up. But certainly we shouldn't be punished for following the rules. So eight days after he was the absolute minimum time to file, and before an appearance was even filed, the interrogatories were filed. There was thereafter an objection. And eight days after, seven or eight days after that, the judge entered an order entering and continuing the objection. So where's the lack of diligence? And then sometime after that, the motion to dismiss was filed. If the concept of class action includes, it's not exclusively, but includes consumer protection because there's no other way, then that is unfairly throwing the baby out with the bathwater. And we believe it's unfair. There is no case in the literature in which at the appellate level, a situation where the plaintiff was acting diligently and their case was mooted and the case dismissed. This would be the first if the appellate court is overruled. Do we look at, or should we look at, and is it relevant? As Counsel for American would argue that the refund was made actually within the time frame of their policy, which you say is difficult to follow. Is that important? As opposed to whether the refund was made simply to pick off your client. If there was a contract and they were within the contract terms, I would answer your question affirmatively. But there was no such thing. And remember that even though Counsel argued about starting an entry level, that's where she got her ticket refunded. That's the person who does it. You don't go to the corporate president and ask for your ticket to be refunded when your flight is canceled. You're instructed by the airline to go to the reservation clerk. So she went to the reservation clerk and got her ticket refunded, but when she asked for her baggage claim back, she didn't get that because he said it's our policy to not refund it, he or she, I don't know. I hope I've answered your question. There being no other questions, thank you very much. Thank you, Mr. LaPelle. Mr. McClellan. A few rebuttal points. I suppose that first, what Counsel mentioned was the ambiguity and arbitrariness of what we proposed. I would suggest it's the opposite. I would suggest it's the arbitrariness of what the Barber Court has said. First of all, I think what Barber did was it's confused, and I think I've heard it today in a counter argument, and that is that you should have this reasonable diligence in pursuing discovery. No, that's not what the general rule was that we talked about this morning. The general rule is a reasonable period of time to pursue the class motion for certification once filed. That's what the problem here is. That has morphed into a reasonable period of time to do discovery. That's the problem with the exception that's emerged. Second, Mr. LaPelle mentioned to the effect that their hands were tied because we hold the keys to the remaining class members. I disagree for this reason. Number one, if we look at the Hildebrand case and the Bremer versus Compaq computer cases in there, both of those cases say the plaintiffs do not have a right to seek discovery of the identity of the class members. It's right in both of those decisions. The second part about that is they alleged in their complaint, record page 18, that they have the sufficient numerosity in their complaint. Well, seven months went by and no substitute member was given. What we didn't hear today, I don't think, and what we didn't see in the Eppley's brief was how the proposed rule that they want to follow in Barber, the adverse effect that has on justiciability and mootness. Even going back to Article 3, it requires a continuing controversy amongst adverse parties who retain the requisite stake in the outcome of litigation. That's something that at least even in law school we learn. It's the first thing you do here. By what's now proposed, we have to take a wait and see approach on the concept of justiciability and mootness. Let's wait and see if they pursue this with diligence. What's that mean? If you have new parties added to the case down the road. If you have stays in discovery or motions to compel or jurisdictional arguments raised by some defendant who has been served. There's a whole mess of things that can wrinkle or make arbitrary what is proposed here about the reasonable period of time to pursue discovery. There was a mention that you need a master's degree to find the policy. I submit that really as far as what we're here for today isn't important. I never really quite understood this about the case because it's not like we had a policy not to pay you back. The policy that we had that was uncontested, it was not in the contract of carriage, it was in the published policy on our website, which is uncontested, that we will pay you back. That's what we wanted to do. And they didn't want to take the money. It would be different, perhaps, if we had a policy and we're not buried somewhere that we don't pay back when our flight gets canceled. We're not going to pay the money back and that's some wrong that could be pursued. We wanted to pay them back. And it was the tender of that, that under the case law and the general rule that we discussed, renders the case moot. Counsel mentioned, well, so what are we so concerned about? Well, I think this case is a perfect example of what we're concerned about. Someone went to the courthouse four days after an apparent ticket dispute at O'Hare Airport and filed a class action lawsuit and here we are two and a half years later still litigating this issue on a case that we believe was mooted when the tender was made. If you're going to say that they should have this wait and see approach, doesn't that also fly in face of the established precedent that we have in this state that says you cannot perpetuate the controversy by denying the tender? That's in all of the cases certainly that I've seen in the case and was made very clear in some of the decisions back after Wheatley that says when you're made a reasonable tender, you can't deny it and say I'll see you in court just to perpetuate that controversy. And that's exactly what will be nullified if we follow the Barber rule. There was a mention of a pick off and the only thing I'd like to say about that is, you know, in reading some of these cases there's almost a, I don't mean it's in a bad way but kind of a cynical attempt that whenever you go make a tender it's for some evil motive. Well, you know, this period of time here, this is a situation where in the service industry we tried to do something within the established time period and let the customer service department do its job. I think that if you're going to look at these kinds of cases, I think it's a mistake to just assume that just because someone made a tender it had some evil cynical motion. Even though that's perfectly allowable under our law under Wheatley and all the cases that follow it, they even say you can make a tender up to the time of the motions filed even if your intention is to thwart the class. It's not what happened here, even though that's perfectly allowable. All we tried to do here was right or wrong. By a person that was at the gate. And for the reasons I stated in the opening argument, I think that the law laid down by Barber won't give us a chance to do that in the future. Mr. LaPell is correct, they can take your money to book a flight, they can give refunds, we're all human. And sometimes people make mistakes. As I mentioned earlier, that's why we have to have a time to cure. And it seems that if you're going to have this kind of a law, the law should allow companies like American, companies like power companies, whoever they are, have the chance to let the customer service department take its course and let things try to work themselves out pursuant to either contracted remedies between the parties or publicly established policies for refunds like we had in this case. Last thing I'd mentioned is there was some talk about the motion to compel or its propriety. The denial of the motion to compel is not up on this appeal. That was never raised in any of the lower courts below, so the propriety of that denial is not before the court today. For all the reasons I've discussed, on behalf of American Airlines, thanks for taking the time to listen to me today. And we'd ask that the court reverse the appellate court order in this case. Thank you. Thank you. Case number 110092, Andrea Barber versus American Airlines, Inc. Agenda number 110092.